UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BMO HARRIS BANK N.A.,<br><br>                    Plaintiff,<br><br>         v.<br><br>ROYAL ROAD LINE INC., *et al.*,<br><br>                    Defendants. | Case No.  1:23-cv-01714-EPG<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT BE GRANTED IN PART<br><br>(ECF No. 11)<br><br>OBJECTIONS, IF ANY, DUE WITHIN FOURTEEN DAYS<br><br>ORDER DIRECTING THE CLERK'S OFFICE TO ASSIGN A DISTRICT JUDGE |

Plaintiff BMO Harris Bank N.A. ("Plaintiff) moves for default judgment against Defendants Royal Road Line Inc. ("Royal Road") and Nishan Singh ("Singh") on state law breach of contract claims. The matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302(c)(19). For the reasons given below, the Court will recommend that Plaintiff's motion for default judgment be granted in part.

I.      BACKGROUND

Plaintiff is a national banking association. (ECF No. 1 at 2). Defendant Royal Road is a commercial trucking business owned by Defendant Singh. (*Id.*) Plaintiff entered into a series of loan and security agreements (collectively, "the Agreements") with Royal Road in December 2021 ("Agreement 78001"), March 2022 ("Agreement 78001"), and March 2023 ("Agreement

1

38001") where Plaintiff agreed to finance Royal Road's purchase of vehicles.[1] (*Id.* at 2-3). In turn, Royal Road agreed to pay Plaintiff pursuant to the terms of the agreements.[2] (*Id.* at 3).

In connection with each agreement, Singh executed a continuing guaranty where Singh guaranteed the performance of Royal Road's liabilities to Plaintiff. (*Id.*) Pursuant to the Agreements, Royal Road granted Plaintiff a first-priority security interest in the vehicles. (*Id.* at 3-4). Defendants defaulted under the terms of the agreements and each corresponding guaranty by failing to pay the amount due to Plaintiff on July 1, 2023 pursuant to Agreement 18001 and Agreement 78001, and by failing to pay the amount due to Plaintiff on July 7, 2023 pursuant to Agreement 38001. (*Id.* at 4). Pursuant to the terms of the Agreements, the entire amount due accelerated upon default. (*Id.*) Further, Defendants are obligated to pay a default interest rate on all unpaid amounts, late charges, all expenses in retaking, holding, preparing, and selling the vehicles, and other fees described in the Agreements, as well as attorneys' fees and costs incurred by Plaintiff in any lawsuit to enforce its rights under the Agreements. (*Id.* at 5).

Plaintiff sent a notice of default and acceleration to Defendants, with a demand for payment and surrender of the vehicles, on November 19, 2023. (*Id.*) However, Defendants failed to pay the amount owed under the Agreements.

Plaintiff recovered the vehicles from two of the agreements (Agreements 18001 and 78001). (*Id.* at 3-4). At the time of filing the complaint, Plaintiff had not recovered the remaining vehicle from Agreement 38001. (*Id.* at 4).

On December 13, 2023, Plaintiff filed its complaint for five claims against Defendants: 1) injunctive relief enjoining Defendants from continued use of the remaining unrecovered vehicle, ordering Defendants to advise Plaintiff of the location of the vehicles, and ordering Defendants to surrender the vehicle; 2) specific performance of Defendants' obligations under the Agreements; 3) claim and delivery of the remaining unrecovered vehicle; 4) breach of contract and damages

---

[1] Plaintiff agreed to finance Royal's purchase of the following vehicles and equipment: 2022 Volvo VNL-SERIES (serial # last four digits -6915) pursuant to Agreement 18001; 2023 Utility Refrigerated Van (VIN # -7424) and 2022 ThermoKing S600 (Serial # -9882) pursuant to Agreement 78001; and 2024 Peterbilt 679 (VIN # -9014) pursuant to Agreement 38001. (ECF No. 1 at 13, 19, 25).

[2] Royal agreed to pay Plaintiff the following amounts: $183,738.24, including interest, pursuant to Agreement 18001; $131,263.20, including interest pursuant to Agreement 78001; and $249,931.20, including interest pursuant to Agreement 38001. (ECF No. 1 at 13, 19, 25; *see also* ECF No. 12 at 3-4).

2

against Royal Road; and 5) breach of contract and damages against Singh. (*Id.* at 6-11). Plaintiff's complaint seeks contractual money damages as provided by the Agreements, including all unpaid amounts owed, costs of collection, interest, and late fees on all unpaid amounts, and attorneys' fees and costs. (*Id.* at 10-11).

On December 29, 2023, Plaintiff served copies of the summons and complaint via substituted service on Royal Road and Singh. (ECF Nos. 6, 7). After Defendants failed to respond to the complaint, Plaintiff obtained a clerk's entry of default under Federal Rule of Civil Procedure 55(a) against the Defendants. (ECF No. 9).

On February 28, 2024, Plaintiff moved for default judgment on its breach of contract claims against Defendants, seeking contractual damages, attorney fees, and costs. (ECF No. 11). No Defendant has responded to the motion, appeared, or otherwise participated in this case.

The Court found the motion suitable for decision without oral argument. (ECF No. 15) (citing L.R. 230(g)).

## II.  LEGAL STANDARDS

Federal Rule of Civil Procedure 55 permits the Court to enter a default judgment following entry of default by the clerk when a party has failed to plead or otherwise defend a case. Fed. R. Civ. P. 55(b)(2). Whether to enter a default judgment lies within the court's discretion. *Draper v. Coombs*, 792 F.2d 915, 925 (9th Cir. 1986). Factors (*i.e.*, the *Eitel* factors) that may be considered in determining whether to enter default judgment include the following:

> (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decision on the merits.

*See Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

"The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987) (citation omitted). Before awarding a default judgment against a defendant, the Court must determine the adequacy of service of process and the Court's jurisdiction over the subject matter and the parties. *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999) ("When entry of judgment is sought against a party who has failed to plead or

3

otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties."); *see S.E.C. v. Internet Sols. for Bus. Inc.*, 509 F.3d 1161, 1165 (9th Cir. 2007) ("We review de novo whether default judgment is void because of lack of personal jurisdiction due to insufficient service of process.").

### III. DISCUSSION

The Court first addresses its subject matter jurisdiction for entering default judgment and personal jurisdiction over Defendants. The Court will also determine whether service of process on Defendants was adequate. The Court will then examine the *Eitel* factors and the terms of the proposed judgment.

**A. Jurisdiction and Service of Process**

1. <u>Subject Matter Jurisdiction</u>

Plaintiff's complaint alleges that the Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332(a). (ECF No. 1 at 1-2).

Federal courts have original jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a)(1). In addition to satisfying the minimum amount in controversy, proper diversity jurisdiction requires that "the citizenship of each plaintiff is diverse from the citizenship of each defendant." *See Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996).

Here, the amount in controversy requirement is satisfied as Plaintiff's complaint seeks money damages equivalent to the amount owed under the Agreements after acceleration, i.e., $382,336.62, plus default fees, default interest, and other fees owed under the Agreements. (ECF No. 1 at 4-5).

Plaintiff and Defendants are also diverse in citizenship. National banking associations are "deemed citizens of the States in which they are respectively located." 28 U.S.C. § 1348. For purposes of diversity jurisdiction, a bank is "located" in the state designated in its articles of association as its main office. *See Wachovia Bank v. Schmidt*, 546 U.S. 303, 318 (2006). The Ninth Circuit has held that under § 1348 a national banking association is a citizen only of the state in which its main office is located. *See Rouse v. Wachovia Mortg., FSB*, 747 F.3d 707, 709

(9th Cir. 2014). In the complaint, Plaintiff states that its main office designated in its articles of association is located in Chicago, Illinois. (ECF No. 1 at 2). Therefore, for purposes of diversity jurisdiction, Plaintiff is located in Illinois and is a citizen of Illinois. *See Wachovia Bank*, 546 U.S. at 318.

Individuals are deemed to be citizens of the state in which they are domiciled. *See Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). Plaintiff's complaint alleges that Singh is a "citizen of the State of California residing at 5675 North Fresno Street, # 113, Fresno, California 93710." (ECF No. 1 at 2).

A corporation is "a citizen of any State in which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. § 1332(c)(1). Plaintiff's complaint alleges that Royal Road is "a corporation organized under the laws of the State of California with its principal place of business located at 5490 North Salinas Avenue, #166, Fresno, California 93722." (ECF No. 1 at 2).

Thus, Plaintiff has established complete diversity between the parties named in the lawsuit and the Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332.

2. Personal Jurisdiction

"A judgment entered without personal jurisdiction over the parties is void." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). A plaintiff must make a prima facie showing of personal jurisdiction by producing "facts that if true would support jurisdiction over the defendant." *Harris Rutsky & Co. Ins. Services, Inc. v. Bell & Clements Ltd.,* 328 F.3d 1122, 1129 (9th Cir.2003) (citation omitted); *see also High Tech Pet Prod., Inc. v. Juxin Pet Prod. Co.*, No. 1:10-CV-00547 LJO GS, 2013 WL 1281619, at *4 (E.D. Cal. Mar. 27, 2013) (quoting *Mwani v. Bin Laden*, 417 F.3d 1, 7 (D.C. Cir. 2005)) (plaintiff retains the burden of proving personal jurisdiction but "may rest their argument on their pleadings, bolstered by such affidavits and other written materials as they can otherwise obtain.").

"Serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant who is subject to the jurisdiction of a court of general [subject matter] jurisdiction in the state where the district court is located." Fed. R. Civ. P. 4(k)(A). California permits its courts to exercise jurisdiction "on any basis not inconsistent with the Constitution. . .of the United

States." Cal. Civ. Proc. Code § 410.10. "Due process permits a court to exercise personal jurisdiction over a defendant only when the defendant has sufficient minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Briskin v. Shopify, Inc.*, 87 F.4th 404, 411 (9th Cir. 2023) (internal citations and quotation marks omitted); *see id.*, at 411-412 (providing a general overview of the different types of personal jurisdiction).

Here, the Court finds that it has general jurisdiction over Defendants. *Briskin*, 87 F.4th at 411 (citing *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021)) (internal quotation marks omitted) ("General jurisdiction extends to any and all claims brought against a defendant, but is only appropriate whether a defendant is essentially at home in the State."). As discussed above, Plaintiff adequately alleges that Singh is domiciled in California, and that Royal Road is a California corporation with its principal place of business in California. (*See* ECF No. 1 at 2). Accordingly, Plaintiff has made a prima facie showing that Defendants are subject to general jurisdiction in California. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011) ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domestic domicile[.]"); *Briskin*, 87 F.4th 404 at 411 (citing *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) ("A corporate defendant is considered at home in its state of incorporation and the place where it maintains its principal place of business.")). And as discussed below, Defendants were both served with summons. Accordingly, the Court has personal jurisdiction over Defendants. Fed. R. Civ. P. 4(k)(A).

3. <u>Service of Process</u>

"A federal court does not have jurisdiction over a defendant unless the defendant has been served properly under Federal Rule of Civil Procedure 4." *Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc.*, 840 F.2d 685, 688 (9th Cir. 1988). Federal Rule of Civil Procedure 4 sets forth the requirements for service within a judicial district of the United States.

Under Rule 4(e), an individual may be served by: (1) following the state law for service of summons in the state where the district court is located or where service is made; (2) delivering a copy of the summons and the complaint to that person personally; (3) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who

resides there; or (4) delivering a copy of each to an agent authorized by appointment or by law to receive service of process. Fed. R. Civ. P. 4(e)(1)-(2). California law, in turn, permits substituted service of an individual by:

> [L]eaving a copy of the summons and complaint . . . at his or her usual mailing address . . . with the person who is apparently in charge thereof, and by thereafter mailing a copy of the summons and complaint by first-class mail.

Cal. Civ. Proc. Code § 415.20(a). Further, if copy of the summons and complaint cannot with reasonable diligence be personally delivered to the person to be served:

> [A] summons may be served by leaving a copy of the summons and complaint at the person's dwelling house, usual place of abode . . . or usual mailing address . . . in the presence of a competent member of the household or a person apparently in charge of his or her . . . usual mailing address . . ., at least 18 years of age, who shall be informed of the contents thereof, and by thereafter mailing a copy of the summons and of the complaint by first-class mail, postage prepaid to the person to be served at the place where a copy of the summons and complaint were left.

*Id.* at § 415.20(b).

Under Rule 4(h), a corporation "or a partnership or other unincorporated association that is subject to suit under a common name" may be served by: (1) following the state law for service of summons in the state where the district court is located or where service is made; or (2) by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or an agent authorized to receive service of process. Fed. R. Civ. P. 4(h)(1)(A)–(B). In California, summons may be served on a corporation by delivering a copy of the summons and the complaint "to the person designated as agent for service of process" as provided by state law. Cal. Code Civ. Proc. § 416.10(a). In lieu of personal delivery to an authorized agent, California also permits substituted service of a corporation by:

> [L]eaving a copy of the summons and complaint during usual office hours in his or her office or, if no physical address is known, at his or her usual mailing address, other than a United States Postal Service post office box, with the person who is apparently in charge thereof, and by thereafter mailing a copy of the summons and complaint by first-class mail, postage prepaid to the person to be served at the place where a copy of the summons and complaint were left.

Cal. Civ. Code Proc. § 415.20(a).

Here, Plaintiff submits sworn affidavits of service of process that indicate that Defendants were served a copy of the summons and complaint via substituted service in compliance with California law. (ECF Nos. 6 at 3; ECF No. 7 at 3-4). Accordingly, the Court finds that Plaintiff

has complied with Rule 4. *See S.E.C.*, 509 F.3d at 1167 (plaintiff seeking default judgment makes prima facie showing of valid service by providing the process server's sworn statements that service was performed on defendant).

### B. *Eitel* Factors

#### 1. Prejudice to Plaintiff

Turning to the *Eitel* factors, Plaintiff argues that it will be prejudiced if judgment is not entered because "Defendants refused to participate in the action and has made default judgment the sole avenue of relief available to Plaintiff." (ECF No. 11 at 5).

The Court agrees that Plaintiff will be prejudiced if a default judgment is not granted. If default judgment is not entered, Plaintiff will effectively be denied relief, as it is apparent that Defendants will not defend this action, and the complaint alleges that Defendants are in continuous default of the unpaid amounts owed to Plaintiff under the terms of the Agreements and each corresponding guaranty. Further, Defendants' refusal to turn over the vehicles required Plaintiff to incur additional repossession fees. Accordingly, this *Eitel* factor weighs in favor of granting default judgment.

#### 2. Substantive Merits and Sufficiency of Complaint

"The second and third *Eitel* factors instruct the Court to evaluate the merits of the substantive claims alleged in the complaint as well as the sufficiency of the complaint itself. It is appropriate for the court to analyze these two factors together." *Arroyo v. J.S.T. LLC*, No. 1:18-cv-01682-DAD-SAB, 2019 WL 4877573, at *6 (E.D. Cal. Oct. 3, 2019) (citations omitted), *report and recommendation adopted*, 2020 WL 32322 (E.D. Cal. Jan. 2, 2020). Essentially, these "factors require [a] plaintiff to state a claim on which plaintiff can recover." *OL USA LLC v. TTS Int'l LLC*, No. 2:21-cv-1541-WBS-DB, 2022 WL 2208527, at *2 (E.D. Cal. June 21, 2022), *report and recommendation adopted*, 2022 WL 4450658 (E.D. Cal. Sept. 23, 2022).

Plaintiff asserts four causes of action in the complaint: (1) injunctive relief; (2) specific performance; (3) breach of contract; and (4) claim and delivery. (ECF No. 1, pp. 5-9). However, only breach of contract is an actual cause of action for relief. The other three causes of action are forms of relief. *See Roberts v. Los Angeles Cty. Bar Assn.*, 105 Cal.App.4th 604, 618 (2003) (injunctive relief is an equitable remedy and not a cause of action); *Inkster v. Fed. Home Loan*

*Mortgage Corp.*, No. 1:12-cv-01249-LJO-MJS, 2012 WL 5933034, at *4 (E.D. Cal. Nov. 27, 2012) (specific performance is a remedy for breach of contract); *Adler v. Taylor*, No. CV 04-8472-RGK(FMOX), 2005 WL 4658511, at *3 (C.D. Cal. Feb. 2, 2005) (claim and delivery is not a separate action but a remedy to return specific property and to award incidental damages). As Plaintiff's motion for default judgment only addresses Plaintiff's claims for breach of contract and money damages against Defendants, the Court will determine whether Plaintiff has sufficiently alleged such claims under California law.

The Court finds that Plaintiff has alleged sufficient facts for a claim for breach of contract against Defendants. Under California law, the elements of a breach of contract claim are: "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach and (4) the resulting damages to the plaintiff." *Oasis West Realty, LLC v. Goldman, et al*, 51 Cal.4th 811, 821 (2011) (internal citation omitted). For a contract to be enforceable, the contract terms must be sufficiently definite as a matter of law for the court "to ascertain the parties' obligations and to determine whether those obligations have been performed." *Ersa Grae Corp. v. Fluor Corp.*, 1 Cal.App.4th 613, 623 (1991). "Stated otherwise, the contract will be enforced if it is possible to reach a fair and just result even if, in the process, the court is required to fill in some gaps." *(Id.)*

As alleged in Plaintiff's complaint, Plaintiff and Royal Road entered into a series of contracts where Plaintiff agreed to finance Royal Road's purchase of the vehicles, and Royal Road granted Plaintiff a first-priority security interest in the vehicles and agreed to repay the loan pursuant to the terms of the Agreements. (*See e.g.*, ECF No. 1 at 2-6). In connection with the Agreements between Plaintiff and Royal Road, Singh executed a continuing guaranty for each agreement where he agreed to the full and timely performance of Royal Road's present and future liabilities to Plaintiff. (*Id.* at 3). As alleged in the complaint, Defendants defaulted under the terms of Agreements by failing to make timely payments, specifically the payments due in July 2023. (*Id.* at 4). Plaintiff performed its obligations under the Agreement, but Defendants failed to cure the default. (*Id.* at 6). Consequently, Defendants owe Plaintiff the unpaid amount, interest, late fees, costs of collection, attorneys' fees and other costs as provided by the Agreements. (*Id.* at 10-11). Thus, Defendants' breach of the Agreements resulted in damages to Plaintiff. Therefore,

accepting all factual allegations in the complaint as true, Plaintiff has adequately demonstrated a substantial likelihood of success on the merits of its breach of contract claims against Defendants.

Accordingly, the Court finds that the second and third *Eitel* factors weigh in favor of granting default judgment.

### 3. Sum of Money in Relation to Seriousness of Conduct

Next, the Court considers the sum of money at stake in the action, with a lower sum weighing in favor of default judgment. *See G & G Closed Circuit Events*, *LLC v. Nguyen*, 3:11-cv-06340-JW, 2012 WL 2339699, at *2 (N.D. Cal. May 30, 2012) (noting that "default judgment is generally disfavored when the sum of money at stake is either too large or unreasonable in light of the defendant's actions").

Here, Plaintiff requests the amount of money owed under the terms of the contracts, including the unpaid principal amount, interest, late fees, repossession fees, and other fees, i.e., $320,377.72. (ECF No. 11 at 4). Plaintiff also seeks litigation costs in the amount of $778.20 and attorneys' fees in the amount of $7,897.50. (*Id.*) These requests are mostly supported and corroborated by Plaintiff's evidence as discussed in detail below.[3] In total, Plaintiff seeks $329,053.42, plus the daily interest amount accrued under the Agreements. (*Id.* at 7).

The Court does not find this amount to be excessive as it is based upon Defendants' obligations under the terms of the Agreement. Accordingly, the Court finds that the fourth *Eitel* factor weighs in favor of granting default judgment.

### 4. Possibility of Dispute

No genuine issue of material fact is likely to exist. Defendants have not responded to the complaint, and Plaintiff has adequately alleged a breach of contract claim against Defendants under California law. Accordingly, the Court finds that the fifth *Eitel* factor weighs in favor of granting default judgment.

### 5. Whether the Default was Due to Excusable Neglect

The Court finds that the default in this matter was not due to excusable neglect. Defendants were served with notice of the complaint and failed to respond. Accordingly, the Court finds that the sixth *Eitel* factor weighs in favor of granting default judgment.

---

[3] The Court is recommending a slight reduction in amount of attorneys' fees sought by Plaintiff's counsel.

### 6. Policy Favoring Decision on the Merits

Default judgments are disfavored because "[c]ases should be decided on their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. However, "the policy favoring decisions on the merit does not preclude entering default judgment" because Defendants' failure to appear has made a decision on the merits impossible. *Arroyo*, 2019 WL 4877573, at *11 (E.D. Cal. Oct. 3, 2019). Accordingly, the Court finds that the seventh *Eitel* factor does not preclude default judgment.

### 7. Conclusion

In light of the discussion of all the *Eitel* factors, the Court recommends that default judgment be entered against Defendants.

## C. Terms of Judgment

Plaintiff's complaint seeks the contractual money damages, including attorneys' fees, costs of collection, interest, and late fees on all unpaid amounts due, as provided by the Agreements, as well as an order permitting Plaintiff to retake possession of the unrecovered vehicle. (ECF No. 1 at 6-11). The Agreements entered by the parties provides as follows:

> **5.2 Remedies.** Upon the occurrence of an event of default . . . Lender may, at its option, with or without notice to Debtor (i) declare this Agreement to be in default . . . (iv) exercise all of the rights and remedies of a secured party under the Uniform Commercial Code and any other applicable laws, including the right to require Debtor to assemble the Equipment and deliver it to Lender at a place to be designated by Lender and to enter any premises where the Equipment may be without judicial process and take possession thereof . . . Lender may dispose of any Equipment at a public or private sale or at auction. Lender may buy at any sale and become the owner of the Equipment. Debtor agrees that Lender may bring legal proceedings to enforce the payment and performance of Debtor's obligations hereunder in any court in the State shown in Lender's address set forth herein, and service of process may be made upon Debtor by mailing a copy of the summons to Debtor at its address shown herein. Debtor shall also pay to Lender all expenses of retaking, holding, preparing for sale, selling and the like, including without limitation (a) the reasonable fees of any attorneys retained by Lender, and (b) all other legal expenses incurred by Lender. Debtor agrees that Debtor is liable for any deficiency remaining after any disposition of Equipment after default.
>
> . . .
>
> **5.3 Acceleration Interest.** Debtor agrees to pay Lender, upon acceleration of the above indebtedness, interest on all sums then owing hereunder at the rate of 1 1/2% per month if not prohibited by law, otherwise at the highest rate Debtor can legally obligate itself to pay or Lender can legally collect under applicable law.

11

(ECF No. 12 at 13, 19, 25). Pursuant to each corresponding guaranty, Singh agreed to pay on demand all indebtedness owed by Royal Road, including all losses, costs and attorneys' fees. (ECF No. 12 at 15, 21, 28).

2. Damages

Plaintiff only seeks default judgment and relief as to its breach of contract claims against Defendants. A plaintiff must prove all damages sought in the complaint, and "[a] judgment by default shall not be different in kind [or] exceed in amount that prayed for in the [complaint]." Fed. R. Civ. P. 54(c). The prevailing party in a breach of contract claim is entitled to recover "as nearly as possible the equivalent of the benefits of performance." *Lisec v. United Airlines, Inc.*, 10 Cal. App. 4th 1500, 1503 (1992). In determining the appropriate sum for a default judgment, the court may rely on the affidavits or documentary evidence submitted by the plaintiff or order a full evidentiary hearing. Fed. R. Civ. P. 55(b)(2); *see also Philip Morris USA, Inc. v. Castworld Products, Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003) (citations omitted) ("Plaintiff's burden in 'proving up' damages is relatively lenient."). "Where damages are liquidated (*i.e.*, capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits), judgment by default may be entered without a damages hearing." *Microsoft Corp. v. Nop*, 549 F.Supp.2d 1233, 1235 (E.D. Cal. 2008) (citing *Dundee Cement Co. v. Howard Pipe & Concrete Prods.*, 722 F.2d 1319, 1323–24 (7th Cir. 1983)).

Regarding Agreement 18001, Plaintiff's motion seeks the following monetary damages as provided by the contract: 1) Remaining Principal Amount: $18,274.15 and 2) Interest and Remaining Fees (including repossession costs): $283.34. (ECF No. 11 at 3). In total, Plaintiff seeks $18,557.49 in contractual damages. (*Id.*) Plaintiff also seeks the daily interest amount accrued under the Agreement 18001, i.e., $9.14 per day, for every day after February 13, 2024. (*Id.*) The declaration of Micki Koepke states that "Plaintiff successfully sold the recovered unit from Agreement 18001 for net proceeds of $100,000.00." (ECF No. 12 at 6-7). The net proceeds were credited to Plaintiff under Agreement 18001. (*Id.* at 6-7).

Regarding Agreement 78001, Plaintiff's motion seeks the following monetary damages as provided by the contract: 1) Principal Amount: $85,644.05 and 2) Interest and Remaining Fees (including repossession costs): $10,051.07. (ECF No. 11 at 3-4). In total, Plaintiff seeks

$95,695.12 in contractual damages. (*Id.* at 4). Plaintiff also seeks the daily interest amount accrued under Agreement 78001, i.e., $42.82 per day, for every day after February 12, 2024. (*Id.*)

Regarding Agreement 38001, Plaintiff's motion seeks the following monetary damages as provided by the contract: 1) Principal Amount: $189,389.73 and 2) Interest and Fees: $16,729.38. (*Id.*) In total, Plaintiff seeks $206,125.11 in contractual damages. (*Id.*). Plaintiff also seeks the daily interest amount accrued under Agreement 38001, i.e., $ 94.70 per day, for every day after February 12, 2024. (*Id.*)

According to the declaration of Micki Koepke, "Plaintiff has recovered all relevant units" and "will sell the units in a commercially reasonably manner and provide a credit to Defndants for the net sale proceeds." (ECF No. 12 at 7).

The principal amount, late charges and unpaid interest owed by Defendants under the agreements is supported by Plaintiff's supporting declaration and the payoff statements drawn from Plaintiff's books and records submitted as an exhibit. (ECF No. 12 at 2-9, 37-44). As set forth in the declaration, the Agreements provide that Defendants are obligated to pay interest on all unpaid amounts at the default rate of 18% per annum (or 1 ½ % per month) upon acceleration. (*Id.* at 6). As for the repossession fees, Plaintiff submits invoices for the costs incurred by Plaintiff in recovering the vehicles and equipment under Agreements 18001 and 78001.[4] (*Id.* at 46-47).

The Court finds that Plaintiff has provided sufficient proof of the damages amount through the declaration from Plaintiff's litigation specialist and supporting documentation. Thus, Plaintiff is entitled to the amount of contractual damages requested, *see Microsoft Corp.*, 549 F.Supp.2d at 1235, and the Court recommends that Plaintiff be awarded $320, 377.72 in monetary damages.

Moreover, Plaintiff is also entitled to prejudgment interest under California law. *See* Cal. Civ. Code § 3287(a) ("A person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in the person upon a particular day, is entitled also to recover interest thereon from that day ...."); *State of California v. Continental Ins. Co.*, 15 Cal.App.5th 1017, 1038 (2017) (internal citations omitted) ("Under [§

---

[4] There were no repossession costs associated with Agreement 38001. (ECF No. 12 at 6).

3287(a)], prejudgment interest is allowable where the amount due plaintiff is fixed by the terms of a contract…"). However, as the daily interest owed under the agreement will continue to accrue up until the date when final judgment is entered, the Court will recommend that Plaintiff be awarded accrued interest at the daily rate for Agreement 18001 ($9.14) for every day after February 13, 2024, as well as the combined daily rate for Agreement 78001 and 38001 ($137.52) for every day after February 12, 2024, until the entry of final judgment.[5]

### 1. Attorneys' Fees and Costs

"A federal court sitting in diversity applies the law of the forum state regarding an award of attorneys' fees." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 883 (9th Cir. 2000). California Civil Procedure Code § 1021 provides that "[e]xcept as attorney's fees are specifically provided for by statute, the measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties." Further, "parties to actions or proceedings are entitled to their costs[.]" Cal. Civil Proc. Code § 1021.

Here, the terms of the Agreement provide that Plaintiff shall be entitled to reasonable attorney fees for costs incurred to enforce the contract. Thus, the Court finds that Plaintiff is entitled to attorneys' fees and costs under California law.

"[T]he fee setting inquiry in California ordinarily begins with the 'lodestar,' i.e., the number of hours reasonably expended multiplied by the reasonable hourly rate." *PLCM Group v. Drexler,* 22 Cal.4th 1084, 1095 (2000). "[W]hen determining a reasonable hourly rate, the relevant community is the forum in which the district court sits." *Camacho v. Bridgeport Financial, Inc.*, 523 F.3d 973, 979 (9th Cir. 2008); *see also PLCM Group*, 22 Cal.4th at 1095 ("The reasonable hourly rate is that prevailing in the community for similar work."). "The fee applicant bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours worked." *Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1992) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). The trial court is given "broad authority to determine the amount of a reasonable fee." *PLCM Group*, 22 Cal.4th at 1095.

---

[5] The amount of prejudgment interest accrued between the time of filing this action, i.e., December 13, 2023, and February 12 and 13, 2023, is included in Plaintiff's calculation of the interest owed by Defendants as reflected in the payoff statements for each agreement. (*See* ECF No. 12 at 40, 42, 44).

Here, Plaintiff's counsel, Hemar, Rousso & Heald, LLP, seeks attorney fees in the amount of $6,110.00 for 18.80 hours performed by Attorney Ken I. Ito at a rate of $325.00 per hour. (ECF No. 13 at 2-3). Plaintiff seeks a total of $778.20 in costs, which consists of the filing fee and service of process. In support of the fee and cost request, Plaintiff attaches the declaration of Attorney Ito, timesheets, and itemized billing entries. (ECF No. 13). The declaration states that Attorney Ito has 11 years of litigation experience with an emphasis in creditors' rights and business and commercial litigation. (*Id.* at 3). The billing entries list the tasks performed in this case. (*Id.* at 5 -12). Additionally, Attorney Ito's declaration states that he anticipates billing an additional $1,787.50 for 5.30 hours of work spent completing the motion for default judgment (2 hours) and to appear at the hearing on the motion (3.50 hours). (*Id.* at 3). The total amount of attorney fees sought in this action is $7,897.50 for a total of 24.30 hours of work. (ECF No. 12 at 4).

The Court finds the requested hourly rate of $325 to be reasonable in light of the hourly rates awarded in the Eastern District. *See BMO Harris Bank N.A. v. Ronsher Trans*, No. 1:23-cv-00369-ADA-SAB, 2023 WL 4234665 at *10 (E.D. Cal. June 28, 2023) ("Hourly rates for attorney fees awarded in the Eastern District of California range from $200-$750, with hourly rates exceeding $600 reserved for attorneys who have been practicing approximately 30 years.") (citing cases). The Court notes that it previously approved an hourly rate of $275 for work performed by Attorney Ito in early 2023. *See BMO Harris Bank N.A. v. Ground Link Express* ("*Ground Link*"), No. 1:23-cv-00226-KES-EPG, 2023 WL 688146 at *10 (E.D. Cal. Feb. 20, 2024); *Ground Link*, 1:23-cv-00226-KES-EPG, ECF No. 15 at 5-6. The Court finds Attorney Ito's increased rate for work performed in late 2023 and early 2024 to be reasonable in light of Attorney Ito's eleven years of experience. *See Siafarikas v. Mercedez- Benz USA, LLC*, No. 2:20-cv-01784-JAM-AC, 2022 WL 16926265, at *3 (E.D. Cal. Nov. 10, 2022) (approving the hourly rate of $250 for an attorney "who has practiced law for three years" and $500 for an attorney who had practiced law for 21 years).

However, upon review, the Court finds the total hours of time expended (24.30 hours) in this matter as set forth in Attorney Ito's itemized billing entries and declaration to be excessive given the minimal complexity of this case and Attorney Ito's experience in litigating these types

15

of actions on behalf of Plaintiff. As an initial matter, the Court did not hold a hearing on the motion for default judgment. (ECF No. 15). Accordingly, the total amount of hours must be reduced by Attorney Ito's estimate of time spent in connection to a hearing before the court, *i.e.*, 3.50 hours.

The time spent by Attorney Ito in drafting template pleadings and routine litigation tasks also warrants a reduction. For example, Attorney Ito billed 5.1 hours to prepare the complaint in this case, prepare complaint exhibits, correspond with client regarding the complaint, and revise the complaint. (*See* ECF No. 13 at 6-7). The complaint in this case seeks the same or similar relief as other complaints filed by Attorney Ito on behalf of Plaintiff arising from commercial transport financing contracts in the Eastern District. *See* ECF No. 1 (filed Dec. 13, 2023); *Ground Link*, 1:23-cv-00226-KES-EPG, ECF No. 1 (filed Feb. 15, 2023); *BMO Harris Bank N.A. v. Ronsher Trans*, No. 1:23-cv-00369-ADA-SAB, ECF No. 1 (filed Mar. 10, 2023); *BMO Harris Bank, N.A. v. Jasvinder Singh, et al.*, No. 1:23-cv-00067-JLT-BAM, ECF No. 1 (filed Jan. 17, 2023); *BMO Harris Bank N.A. v. Laddi Truck Lines, Inc.*, No. 1:23-cv-00070-ADA-HBK, ECF No. 1 (filed Jan. 1, 2023). The Court finds that the complaint in this case should not have taken more than 3.0 hours to prepare and will accordingly reduce the award amount.

Additionally, several of Attorney Ito's billing entries reflect clerical tasks that should not have taken that much time to complete. For example, on December 13, 2023, Attorney Ito billed .40 hours of time to prepare the civil case cover sheet; on December 14, 2023, Attorney Ito billed 1.0 hours of total time to prepare the Rule 7.1 disclosure and to review and analyze the summons, consent to magistrate agreement, initial order regarding cases, ADR notice, and order setting scheduling conference; on December 15, 2023, Attorney Ito billed .30 hours of time to prepare and complete the consent to magistrate judge jurisdiction form; on January 17, 2024, Attorney Ito billed .30 hours of time to review and analyze the proofs of service for compliance; on January 30, 2024, Attorney Ito billed another .20 hours of time to review and analyze the summons; and on February 1, 2024, Attorney Ito billed .70 hours to review the Clerk's entry of default.[6] (*See* ECF No. 13 at 8-10). These entries are either excessive, duplicative or are clerical tasks that should not be billed at an attorney rate. The Court finds these tasks should not have taken more

---

[6] The total amount of time spent on these tasks was approximately 2.90 hours.

than 1.00 hours to complete and will reduce the award amount accordingly.

Based on the foregoing, the Court recommends Plaintiff be awarded 16.8 hours of attorney time at a rate of $325.00, for a total fee amount of $5,460.00. The Court also recommends that Plaintiff be awarded $778.20 for the costs of litigation as permitted by the parties' agreement and supported by Plaintiff's submitted billing statements.

### IV.  CONCLUSION AND RECOMMENDATIONS

For the reasons discussed above, Plaintiff is entitled to default judgment in most respects. Accordingly, IT IS RECOMMENDED that:

1. Plaintiff's motion for default judgment (ECF No. 11) be GRANTED, in part, as specified below:

    a. Judgment be entered in favor of Plaintiff BMO Harris Bank N.A. against Defendants Royal Road Express, Inc. and Nishan Singh.

    b. Plaintiff be awarded $320, 377.72 in monetary damages.

    c. Plaintiff be awarded the prejudgment interest accrued at the contracted daily rate of $9.14 for each day after February 13, 2024, as well as and the combined contracted daily rate of $137.52 for each day after February 12, 2024, until the entry of final judgment.

    d. Plaintiff be awarded $5,460.00 in attorneys' fees and $778.20 in costs.

2. Upon recovery and sale of the identified vehicles in a commercially reasonable manner, the money judgment entered be credited with the net sale proceeds of the vehicles.

3. The Clerk of Court be directed to close this case.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these findings and recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

**V. ORDER**

Additionally, the Clerk of the Court is directed to assign a district judge to this case.

IT IS SO ORDERED.

Dated: **May 20, 2024**   /s/ Erica P. Grosjean
UNITED STATES MAGISTRATE JUDGE